CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
June 06, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 5:12-cr-00002 |
| v. ) | |
| ) | |
| SAMUEL LEE FIELDS, ) | By: Michael F. Urbanski |
| Defendant-Petitioner ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on motions for compassionate release filed by Samuel Lee Fields pursuant to 18 U.S.C. § 3582(c)(1)(A). Fields filed a pro se motion on March 20, 2023, and on November 27, 2023, the Federal Public Defender (FPD) filed a supplemental motion on Fields' behalf. ECF Nos. 517, 527. The government filed a response to the motions. ECF No. 536. Also pending is Fields' pro se "Motion for Status Quo," ECF No. 524. For the reasons stated herein, the court **DENIES** Fields' pro se motion for compassionate release; **DENIES without prejudice** the supplemental motion for compassionate release; and **ORDERS** additional briefing as set forth below. Fields' "Motion for Status Quo" is **DENIED as moot**.

### I. Background

On February 2, 2012, Fields and five codefendants were charged with seven counts related to distributing drugs. Fields was charged with one count of conspiring to distribute and manufacture 280 grams or more of a mixture and substance containing a detectable amount of cocaine base, or "crack," more specifically, 5 kilograms or more of crack; conspiring to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin; and conspiring to distribute 100 grams or more of PCP, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), all in violation of 21 U.S.C. § 846 (Count One); and one count of possessing with

1

intent to distribute a detectable amount of crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Seven). Indictment, ECF No. 15.

On March 13, 2012, the government filed notice of its intent to establish prior convictions on which it intended to rely to seek an increase in punishment for Fields, pursuant to 21 U.S.C. § 851.[1] Information Notice, ECF No. 81. The information alleged that Fields had two prior convictions for drug felonies. With establishment of the prior convictions, Fields faced an increased penalty of a mandatory life sentence. Id.; 21 U.S.C. § 841(b)(1)(A) (2010).

On August 2, 2012, Fields and one codefendant were charged in a superseding indictment. Fields was charged with the same two counts as in the original indictment along with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Six). Superseding Indictment, ECF No. 203.

On September 26, 2012, an information was filed charging Fields with conspiring to distribute and manufacture 280 grams or more of crack, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and all in violation of 21 U.S.C. § 846. Information, ECF No. 232. On June 19, 2013, Fields entered into an amended plea agreement, pursuant to Rule 11(c)(1)(C), in which he pled guilty to Count One of the Information.[2] The parties agreed that Fields would be sentenced to 240 months on Count One, which was the statutory minimum sentence. Second Am. Plea Agreement, ECF No. 355 at 3; Pre-Sentence Investigation Report (PSR), ECF No. 389 ¶ 81; 21 U.S.C. § 841(b)(1)(A). The United States agreed that it would not consider one of Fields'

---

[1] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

[2] Fields previously had entered into a non-binding plea agreement on June 21, 2012, ECF No. 138, and an amended Rule 11(c)(1)(C) plea agreement on September 26, 2012. ECF No. 235.

prior convictions as a basis for an increased penalty range. Second Am. Plea Agreement, ECF No. 355 at 3. The dismissal from consideration of one of the prior convictions decreased Fields' statutory minimum sentence from life imprisonment to 20 years. 21 U.S.C. § 841(b)(1)(A) (2010).

Fields stipulated that the career offender guideline set forth at USSG § 4B1.1(b)(1) could be applied to his conduct. "I understand that because of my prior criminal record I may be treated as a "Career Offender" under Guideline Section 4B1.1, if the Court determines I have at least two prior convictions for felony drug offenses and/or crimes of violence." Id. at 4.[3] However, as discussed below, it is clear from the record that Fields was not sentenced as a career offender.

At the time Fields was convicted of conspiracy to distribute 280 grams or more of crack cocaine, he faced a statutory sentencing range of 20 years to life because of the prior conviction for a serious drug offense. PSR, ECF No. 389 ¶ 78; 21 U.S.C. § 841(b)(1)(A) (2010).[4] Fields was held responsible for distributing at least 840 grams but less than 2.8 kilograms of crack cocaine. PSR, ECF No. 389 ¶ 24. Under the United States Sentencing Guidelines (USSG or guidelines) in effect at the time, the drug weight gave him a base offense level of 34, increased by 2 levels for possessing a firearm in connection with the offense, and decreased by 3 levels for acceptance of responsibility, for a total offense level of 33. Id. ¶¶ 25–33.

Fields had 13 criminal history points which established a criminal history category of VI. Id. ¶ 51; USSG Ch. 5 Pt. A. The combination of a total offense level of 33 and criminal history category VI resulted in a guidelines sentencing range of 235 to 293 months. PSR, ECF No. 389

---

[3] This language was part of the original plea agreement, which was not a Rule 11(c)(1)(C) binding plea agreement. ECF No. 138 at 4. The second amended plea agreement was a binding plea agreement, and it is unclear why the language about the career offender guideline was included because the parties agreed to the statutory mandatory minimum sentence.

[4] Today his mandatory minimum sentence would be 15 years to life. 21 U.S.C. § 841(b)(1)(A) (2022).

¶ 78; USSG Ch. 5 Pt. A. However, because the statutory minimum sentence was 20 years, his guidelines range was 240 to 293 months. PSR, ECF No. 389 ¶ 79; USSG 5G1.1(b).

On July 18, 2013, Fields was sentenced to a term of 240 months, to be followed by a 10-year period of supervised release. J., ECF No. 365. The court adopted the PSR without change, and calculated Fields' guidelines range as 240 to 293 months. Statement of Reasons, ECF No. 366 at 1. Fields is incarcerated at Federal Correctional Institution Fort Dix and has a projected release date of February 24, 2029.[5]

Fields seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). In his pro se motion, he argues that he is susceptible to becoming seriously ill from COVID-19 which he contends is an extraordinary and compelling reason for a sentence reduction. In addition, he argues that he is entitled to a sentence reduction because United States Attorney General Merrick Garland issued a memorandum to federal prosecutors instructing them to end charging and sentencing disparities in cases involving crack cocaine. In the supplemental motion submitted by the FPD, he argues that if he were sentenced today, he would have a substantially lower guidelines sentencing range which would likely result in a substantially lower sentence. He contends that this difference in sentences is an "extraordinary and compelling" reason to grant compassionate release.

## II. Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (FSA), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to

---

[5] https://www.bop.gov/inmateloc// (search "Samuel Lee Fields") (last viewed May 21, 2024).

>appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Fields' requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. Fields submitted his request for compassionate release to the warden of his facility on December 27, 2022, ECF No. 517-1, and filed his motion for a sentence reduction more than 30 days later. The government does not dispute that Fields has exhausted his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court finds that Fields has satisfied the statute's exhaustion requirement.

The court next must turn to the merits of Fields' motions. Effective November 1, 2023, the United States Sentencing Commission amended the section of the guidelines that addresses

5

motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL §3E1.1 (NOV. 2023) ("USSG" or "guidelines"). The revised guidelines will be applied to Fields' arguments.

### A. COVID-19

Fields contends that he is entitled to compassionate release based on conditions created by the COVID-19 pandemic. He argues that because he suffers from obesity and hypertension, and is pre-diabetic, he is at increased risk for severe illness if he should contract the virus. Mot., ECF No. 517 at 1–3.

Under the revised guidelines, to demonstrate an extraordinary and compelling reason for a sentence reduction based on an outbreak of an infectious disease a defendant must show the following:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i);
>
> and (iii) such risk cannot be adequately mitigated in a timely manner.

USSG § 1B1.13(b)(1)(D).

Fields cannot make this showing because he cannot show either that FCI Fort Dix is affected by an outbreak of an infectious disease, or that an ongoing public health emergency is currently in effect as declared by a federal, state, or local authority. At this time, FCI Fort Dix

6

has one open case of COVID-19 out of 3,781 inmates.[6] In addition, on May 11, 2023, the United States Department of Health and Human Services announced the end of the public health emergency caused by the COVID-19 pandemic.[7]

Moreover, even if Fields could show the existence of the first two conditions, he cannot show that he is at increased risk of suffering severe medical complications or death that cannot be adequately mitigated in a timely manner. Fields argues that he is at special risk from COVID-19 because of his personalized health risk factors, and the record shows that he has been diagnosed with hypertension, obesity, an unspecified metabolic disorder, and is considered pre-diabetic. Med. Rs, ECF No. 490-4. However, at 40 years old, Fields is a young man and has been vaccinated against COVID-19. Med. Rs., ECF No. 517-3. The Bureau of Prisons continues to offer booster vaccines in accordance with guidance from the Centers for Disease Control and the Advisory Committee on Immunization Practices.[8] The vaccines "provide sustained protection against severe disease and death...."[9] Therefore, even if Fields could show that COVID-19 was causing an outbreak at his facility or was considered an ongoing public health emergency, he cannot show that his risk is not mitigated by his being vaccinated against the virus.

Based on the foregoing, Fields cannot show that COVID-19 creates an extraordinary and compelling reason for a sentence reduction and therefore, his motion for a sentence reduction citing conditions caused by the COVID-19 pandemic is **DENIED**.

---

[6] https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last viewed May 21, 2024).
[7] https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html (last viewed May 21, 2024).
[8] See COVID-19 Vaccine Guidance, Federal Bureau of Prison Clinical Guidance, January 2023, https://www.bop.gov/resources/health_care_mngmt.jsp (last viewed May 21, 2024).
[9] https://www.cdc.gov/respiratory-viruses/whats-new/5-things-you-should-know.html (updated Oct. 13, 2023) (last viewed May 21, 2024).

### B. Sentencing Disparity

Fields argues that if he were sentenced for the same offense today as he was in 2013, his sentence would be substantially shorter and that the disparity in the two sentences presents an extraordinary and compelling reason for a sentence reduction. The revised guidelines provide that a defendant is eligible for a sentence reduction if he can show the following:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) Limitation on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §§ 1B1.13(b)(6) and (c).

Fields makes two arguments based on what he believes is an alleged disparity between the sentence he received and the sentence he would receive today for the same conviction. Fields has served more than 10 years of his term of imprisonment and thus meets the first criteria for a reduction.

#### (1) Disparity Between Crack Cocaine and Powder Cocaine

Fields argues that he is entitled to a sentence reduction based on a memorandum

8

distributed by United States Attorney General Merrick Garland on December 16, 2022. Mem. from the Att'y Gen. to All Federal Prosecutors (Dec. 16, 2022). In the memorandum, Garland states that the Justice Department supports elimination of the crack-to-powder sentencing disparity. Id. He directs that in cases in which Title 21 mandatory minimum sentences are applicable based on drug type and quantity, prosecutors should decline to charge the quantity necessary to trigger a mandatory minimum sentence if the defendant satisfies certain criteria. Id. at 1–2. The memorandum further directs that if charging a mandatory minimum term of imprisonment under Title 21 for a drug offense involving crack cocaine is deemed warranted, prosecutors should charge the pertinent statutory quantities that apply to powder cocaine offenses. Id. at 5. In addition, at sentencing, prosecutors should advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine, and where a court concludes that the crack cocaine guidelines apply, prosecutors generally should support a variance to the guidelines range that would apply to the comparable quantity of powder cocaine. Id.

Fields argues that because he was sentenced for distribution of 280 grams or more of crack cocaine, he is entitled to a reduction in his sentence to reflect what his sentence would have been if he were convicted of distributing 280 grams or more of powder cocaine. Mot., ECF No. 517 at 3. While Field's pro se argument that the law has changed is intuitively appealing in light of the compassionate release statute and USSG § 1B1.13, the memorandum also provides that the policies contained therein "are intended solely for the guidance of attorneys for the government. They are not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States." Id., n.4 (citing Justice Manual § 9-27.150 (updated Feb. 2018) and United States v. Caceres, 440

9

U.S. 741 (1979)). Given the caveat in the memorandum and the lack of any authority to the contrary, the court must **DENY** Fields' motion for compassionate release based on Garland's memorandum as it does not provide an extraordinary and compelling reason for a sentence reduction.

### (2) Career Offender Designation

In his supplemental motion, Fields contends that his "guilty plea was entered pursuant to an agreement that was in turn predicated on Mr. Fields' being a career offender." Supp. Mot., ECF No. 527. Fields argues that because his only count of conviction is a count of conspiracy, he cannot be considered a career offender under United States v. Norman, 935 F.3d 232 (4th Cir. 2019). In Norman, which was decided after Fields was sentenced, the Fourth Circuit determined that convictions for conspiracy to distribute drugs are no longer considered controlled substance offenses under USSG § 4B1.2. The court reasoned that because the "generic, contemporary meaning" of "conspiracy" requires an overt act, and "conspiracy" under § 846 does not require an overt act, § 846 criminalizes a broader range of conduct than that covered by generic conspiracy. Id. at 236–38. Accordingly, if sentenced today, Fields' conspiracy offense would not be considered a controlled substance offense and therefore would not satisfy the requirements of USSG §4B1.1(2).

While Fields is correct that after Norman, his § 846 conspiracy conviction would not qualify for the career offender enhancement, his argument nevertheless fails because Fields was not sentenced as a career offender. Fields' PSR shows that he did not receive an increase in his base offense level under Chapter Four of the guidelines. PSR, ECF No. 389 ¶ 20. Rather, his guidelines sentence was calculated based on drug weight. Id. ¶ 24. Had Fields been sentenced as a career offender under Chapter Four of the guidelines, his base offense level would have been

10

37 and his total offense level would have been 36. With his criminal history category of VI, his guidelines sentencing range would have been 324 to 405 months. USSG Ch. 5 Pt. A; PSR, ECF No. 389 ¶ 80. However, both the PSR and the Statement of Reasons reflect that Fields' base offense level was calculated as 34 based on drug weight and his total offense level was 33, which with his criminal history category of VI gave him a guidelines range of 235 to 293 months. Because he was subject to a statutory mandatory minimum sentence of 20 years, the bottom of his guidelines range was increased to 240 months, giving him a range of 240 to 293 months. PSR, ECF No. 389 ¶ 79; Statement of Reasons, ECF No. 366 at 1. Accordingly, as the record shows that Fields was not sentenced as a career offender but was sentenced to the statutory mandatory minimum sentence in effect at that time, he is not entitled to a sentence reduction based on Norman.

**(3) Change in Mandatory Minimum Sentence**

Although neither party briefed the issue, Fields may meet the "change in the law" criterion in USSG §§ 1B1.13(b)(6) on another ground. At the time Fields was sentenced, the mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) for a defendant with one prior qualifying conviction was 20 years and a defendant with two prior convictions faced a mandatory minimum sentence of life in prison. In 2018, the mandatory minimum sentences were reduced to 15 years and 25 years respectively. 21 U.S.C. § 841(b)(1)(A) (2018). This court previously has found that a change in the mandatory minimum sentence under the statute constituted an extraordinary and compelling reason for a sentence reduction, albeit before adoption of the revised sentencing guidelines that became effective in November 2023. See United States v. Mariano, No. 5:14cr07 (W.D. Va. Oct. 2, 2023); United States v. Britton, No. 5:12cr14 (W.D. Va. Sept. 6, 2022); and United States v. Williams, No. 5:12cr14 (W.D. Va. Sept. 30, 2020).

11

Because this issue merits further development, the parties are **ORDERED** to submit additional briefing addressing whether Fields is entitled to compassionate release based on the change to the mandatory minimum sentences set forth in 21 U.S.C. § 841(b)(1)(A). If the government argues, as it did in its response to the instant motion, that the United States Sentencing Commission exceeded its congressionally delegated authority in promulgating USSG §1B1.13(b)(6), ECF No. 536 at 14–26, Fields is **ORDERED** to respond to the argument. The parties are further **ORDERED** to provide updated evidence related to Fields' institutional history so that the court may properly address the 18 U.S.C. § 3553(a) factors should it determine that Fields has shown an extraordinary and compelling reason for a sentence reduction. See United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021) (finding that district court must consider petitioner's post-sentencing conduct when assessing a motion to reduce sentence).

### III. Conclusion

Based on the foregoing, the court **DENIES** Fields' pro se motion for compassionate release, ECF No. 517; **DENIES without prejudice** the supplemental motion for compassionate release, ECF No. 527, and **ORDERS** additional briefing as described above. Fields' "Motion for Status Quo," ECF No. 524, is **DENIED as moot.**

An appropriate order will be entered.

It is so **ORDERED.**

Entered: June 5, 2024

Michael F. Urbanski
Chief United States District Judge