CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

October 17, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

UNITED STATES OF AMERICA            )
                                    )    Criminal No. 5:12-cr-00002
v.                                  )
                                    )    By: Michael F. Urbanski
SAMUEL LEE FIELDS, JR.,             )    Senior United States District Judge
Defendant-Petitioner                )

### AMENDED MEMORANDUM OPINION[1]

This matter comes before the court on defendant Samuel Lee Fields, Jr.'s motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). On June 6, 2024, this court denied with prejudice a pro se motion for compassionate release and denied without prejudice a supplemental motion for compassionate release filed by counsel. In addition, the court ordered the parties to brief the issue of whether Fields is entitled to compassionate release based on the change in the mandatory minimum sentences set forth in 21 U.S.C. § 841(b)(1)(A). ECF No. 538. The parties have now briefed the issues, ECF Nos. 540, 541, and as set forth below, the court will **GRANT** Fields' supplemental motion and **REDUCE** his sentence from 240 months to 180 months, but not less than time served.[2] Fields' term of incarceration will be followed by a 10-year term of supervised release.

### I. Background

On February 2, 2012, Fields and five codefendants were charged with seven counts related to distributing drugs. Fields was charged with one count of conspiring to distribute and

---

[1] This opinion is amended for the limited purpose of clarifying the review process for policy statements promulgated by the United States Sentencing Guidelines and does not change the disposition of Fields' motion.
[2] The court construes Fields' supplemental response, ECF No. 541, as a supplemental motion for compassionate release.

manufacture 280 grams or more of a mixture and substance containing a detectable amount of cocaine base, or "crack," more specifically, 5 kilograms or more of crack; conspiring to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin; and conspiring to distribute 100 grams or more of PCP, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), all in violation of 21 U.S.C. § 846 (Count One); and one count of possessing with intent to distribute a detectable amount of crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Seven). Indictment, ECF No. 15.

On March 13, 2012, the government filed notice of its intent to establish prior convictions on which it intended to rely to seek an increase in punishment for Fields, pursuant to 21 U.S.C. § 851.[3] Information Notice, ECF No. 81. The information alleged that Fields had two prior convictions for drug felonies. With establishment of the prior convictions, Fields faced an increased penalty of a mandatory life sentence. Id.; 21 U.S.C. § 841(b)(1)(A) (2010).

On August 2, 2012, Fields and one codefendant were charged in a superseding indictment. Fields was charged with the same two counts as in the original indictment along with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Six). Superseding Indictment, ECF No. 203.

On September 26, 2012, an information was filed charging Fields with conspiring to distribute and manufacture 280 grams or more of crack, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and all in violation of 21 U.S.C. § 846. Information, ECF No. 232. On June

---

[3] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

19, 2013, Fields entered into an amended plea agreement, pursuant to Fed. R. Crim. Pro. 11(c)(1)(C), in which he pled guilty to Count One of the Information.[4] The parties agreed that Fields would be sentenced to 240 months on Count One, which was the statutory minimum sentence. Second Am. Plea Agreement, ECF No. 355 at 3; Pre-Sentence Investigation Report (PSR), ECF No. 389 ¶ 78; 21 U.S.C. § 841(b)(1)(A). The United States agreed that it would not consider one of Fields' prior convictions as a basis for an increased penalty range. Second Am. Plea Agreement, ECF No. 355 at 3. The dismissal from consideration of one of the prior convictions decreased Fields' statutory minimum sentence from life imprisonment to 20 years. 21 U.S.C. § 841(b)(1)(A) (2010).[5]

Fields was responsible for distributing at least 840 grams but less than 2.8 kilograms of crack cocaine. PSR, ECF No. 389 ¶ 24. Under the United States Sentencing Guidelines (USSG or guidelines) in effect at the time, the drug weight gave him a base offense level of 34, increased by 2 levels for possessing a firearm in connection with the offense, and decreased by 3 levels for acceptance of responsibility, for a total offense level of 33. Id. ¶¶ 25–33.

Fields had 13 criminal history points which established a criminal history category of VI. Id. ¶ 51; USSG Ch. 5 Pt. A. The combination of a total offense level of 33 and criminal history category VI resulted in a guidelines sentencing range of 235 to 293 months. PSR, ECF No. 389 ¶ 78; USSG Ch. 5 Pt. A. However, because the statutory minimum sentence was 20 years, his guidelines range was 240 to 293 months. PSR, ECF No. 389 ¶ 79; USSG 5G1.1(b).

---

[4] Fields previously had entered into a non-binding plea agreement on June 21, 2012, ECF No. 138, and an amended Rule 11(c)(1)(C) plea agreement on September 26, 2012. ECF No. 235.

[5] As discussed below, today Fields' mandatory minimum sentence would be 15 years to life. 21 U.S.C. § 841(b)(1)(A) (2022).

On July 18, 2013, Fields was sentenced to a term of 240 months, to be followed by a 10-year period of supervised release. J., ECF No. 365. The court adopted the PSR without change, and calculated Fields' guidelines range as 240 to 293 months. Statement of Reasons, ECF No. 366 at 1. Fields is incarcerated at Federal Correctional Institution Fort Dix and has a projected release date of February 24, 2029.[6]

In Fields' first two motions for compassionate release, he sought a sentence reduction based on (1) the COVID-19 pandemic, (2) a memorandum distributed by United States Attorney General Merrick Garland on December 16, 2022, that addressed sentencing disparities between powder cocaine and crack cocaine, and (3) his status as a career offender. The court denied compassionate release on these grounds for the reasons set forth in the Memorandum Opinion and Order docketed on June 6, 2024. ECF Nos. 537, 538.

The court further ordered the parties to address whether Fields met the "change in the law" criterion in USSG §1B1.13(b)(6) because of changes to the mandatory minimum sentences set out in 21 U.S.C. § 841(b)(1)(A). The parties also were ordered to address whether the 28 U.S.C. § 3553(a) factors weigh in favor or against a sentence reduction in Fields' case. Mem. Op., ECF No. 537 at 11–12. They have now done so, and the court will address their arguments.

## II. Analysis

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (FSA), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion

---

[6] https://www.bop.gov/inmateloc// (search "Samuel Lee Fields") (last viewed Aug. 12, 2024).

of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . <u>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.</u>

(emphasis added).

Prior to enactment of the First Step Act of 2018, only the Bureau of Prisons could file a motion for compassionate release on behalf of an inmate. <u>United States v. High</u>, 997 F.3d 181, 185 (4th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A) (2002)). The First Step Act, among other changes, amended § 3582(c)(1)(A) to allow inmates to file motions with a district court on their own behalf after exhausting their administrative remedies.

The statute also requires that any reduction based on an extraordinary and compelling reason be consistent with applicable policy statements issued by the United States Sentencing Commission (the Commission). But, prior to March 2023, there were no "applicable policy statements" to reference, because the Commission lacked a quorum and could not act. <u>See</u> discussion, <u>United States v. McCoy</u>, 981 F.3d 271, 280–84 (4th Cir. 2020).[7] In the absence of

---

[7] <u>See also</u> U.S. Sentencing Comm'n Annual Report 2–3 (2019)
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.

applicable policy statements, courts looked to relevant sentencing guidelines provisions to determine whether a motion presented an extraordinary and compelling reason warranting a sentence reduction. United States v. Davis, 99 F.4th 647, 654 (4th Cir. 2024). Courts in the Fourth Circuit (and other circuits) held that a change in law that resulted in a gross disparity between the sentence a defendant received and the sentence that he likely would receive were he convicted today could be an extraordinary and compelling reason warranting a sentence reduction. See McCoy, 981 F.3d at 286, and the cases that followed it.

In May 2023, the Commission achieved a quorum and adopted revised guidelines that became effective November 1, 2023. Included in the revisions were policy statements addressing motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL §3E1.1 (NOV. 2023). As is relevant to Fields' motion, the revisions include a policy statement that addresses when an "unusually long sentence" can be a reason for a court to grant a sentence reduction under § 3582(c)(1)(A). The policy statement provides that a defendant is eligible for a sentence reduction if he can show the following:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

6

> (c) Limitation on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §§1B1.13(b)(6) and (c).

Fields is serving a statutory mandatory minimum sentence of 20 years. In his supplemental motion, he cites to the revised policy statement, and argues that if he were sentenced today, he would face a minimum term of 15 years and that the difference in the sentence he currently is serving and that which he would likely have to serve today is a gross disparity that warrants compassionate release. Fields has served more than 10 years of his term of imprisonment and thus meets the first criteria for a reduction.

In its supplemental response, the government makes three arguments in support of its contention that Fields is not entitled to a sentence reduction: (1) The Commission exceeded its congressionally delegated authority in promulgating USSG § 1B1.13(b)(6); (2) The change in the statutory mandatory minimum sentence applicable to Fields is not an extraordinary and compelling reason for a sentence reduction; and (3) The § 3553(a) factors weigh against a sentence reduction. Each will be addressed in turn.

### A. Sentencing Commission's Authority to Promulgate USSG § 1B1.13(b)(6) and (c).

The government reiterates the argument it made in its original response that the Commission exceeded its authority when it promulgated USSG §§ 1B1.13(b)(6) and (c). Supp.

7

Resp., ECF No. 540 at 2; Resp., ECF No. 536. In light of the argument, a short review of the purpose and functions of the Commission is in order.

The Commission was established in 1984 as an independent commission in the judicial branch of the United States, with the purpose of establishing sentencing policies and practices of the federal criminal justice system that (1) assure the meeting of the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2); (2) provide certainty and fairness in meeting the purposes of sentencing and avoiding unwarranted sentencing disparities while maintaining sufficient flexibility to permit individualized sentences; (3) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process; and (4) develop means of assessing the degree to which sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2).[8] 28 U.S.C. § 991.

Among other duties, the Commission, by a vote of four of its seven members, pursuant to its rules and regulations and consistent with all relevant federal statutes, shall promulgate guidelines for use by a sentencing court in determining a sentence to be imposed. 28 U.S.C. § 994(a)(1). The Commission also is tasked with promulgating general policy statements regarding application of the guidelines, or other aspects of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in

---

[8] Section 3553(a) sets out the factors a court considers in imposing a sentence, including
(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2), including the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3582(c).[9] 28 U.S.C. § 994(a)(2).

The Commission further is directed to review and revise the guidelines and submit proposed guidelines amendments to Congress for review:

> The Commission, at or after the beginning of a regular session of Congress, but not later than the first day of May, may promulgate under subsection (a) of this section and submit to Congress amendments to the guidelines and modifications to previously submitted amendments that have not taken effect, including modifications to the effective dates of such amendments. Such an amendment or modification shall be accompanied by a statement of the reasons therefor and shall take effect on a date specified by the Commission, which shall be no earlier than 180 days after being so submitted and no later than the first day of November of the calendar year in which the amendment or modification is submitted, except to the extent that the effective date is revised or the amendment is otherwise modified or disapproved by Act of Congress.

28 U.S.C. § 994(p). Notably, policy statements like the one at issue here are not subject to the 180-day waiting period applicable when the Commission passes a Guidelines Amendment. United States v. Colon, 707 F.3d 1255, 1260–61 (11th Cir. 2013); United States v. Horn, 679

---

[9] The statute provides in relevant part the following:
(c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
(1) in any case--
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
(i) extraordinary and compelling reasons warrant such a reduction; ....

9

F.3d 397, 406 (6th Cir. 2012). However, "to the extent practicable, the Commission shall endeavor to include amendments to policy statements and commentary in any submission of guideline amendments to Congress and put them into effect on the same November 1 date as any guideline amendments issued in the same year." U.S. Sentencing Comm'n, Rules of Practice and Proc. 4.1.

When revising the guidelines, the Commission is directed to consider comments and data coming to its attention and also to consult with authorities and representatives of various entities of the criminal justice system. The United States Probation System, the Bureau of Prisons, the Judicial Conference of the United States, the Criminal Division of the United States Department of Justice, and a representative of the Federal Public Defenders are to submit observations, comments, or questions pertinent to the work of the Commission and shall submit at least annually, a report commenting on the guidelines and suggesting changes that appear warranted. 28 U.S.C. § 994(o).

Finally, as is relevant to this case, Congress directed that the Commission, in promulgating general policy statements regarding the sentence modification provisions in 18 U.S.C. § 3582(c)(1)(A), "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The only qualification to this directive is that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 944(t). Against this backdrop, the Commission promulgated USSG §§ 1B1.13(b)(6) and (c), set forth above.

In reviewing the revised policy statement and considering the requirements of the statute, it appears that the Commission fulfilled the statutory prerequisites. As explained by the Chair of the Commission, the change to the policy statement (and the other changes made by the Commission) were made after input from individuals and communities across the country, including Congress, the chambers of federal courts, prosecutors, public defenders, probation officers, and members of the public. Sent. Comm. Public Meeting Tr. from April 5, 2023, at 5–7.[10] The policy about which was Commission received the most commentary was the one under scrutiny here—the program statement addressing compassionate release. See Discussion, id. at 9–17.

The motion to adopt the amended policy statement passed by a vote of four to three, Id. at 81–82, along with the other proposed amendments to the guidelines and policy statements. The amendments were adopted by the Commission on April 5, 2023, and the Commission submitted them to Congress on April 27, 2023, along with a statement of reasons for the proposed amendments. Even though the Commission is not required to submit changes to policy statements to Congress, it submitted all the proposed amendments, including the policy statement regarding "unusually long sentences," as a package. Congress did not act to modify or disapprove the amendments and they became effective on November 1, 2023. See 88 Fed. Reg. 28,254-01, 28,255, 28,258–28,259, 2023 WL 3199918 (F.R. May 3, 2023).

---

[10] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf (last viewed Aug. 14, 2024).

The government appears to concede that the Commission exercised its delegated authority in promulgating the revised policy statement, but argues that the Commission's interpretation of the statute should be set aside because it is unreasonable. Resp., ECF No. 536 at 14. The government cites United States v. LaBonte, 520 U.S. 751, 753 (1997), where the Court commented that while the Commission is charged with establishing sentencing policies and practices for the federal criminal justice system, its discretion is not "unbounded." Although the Commission's discretion is broad, "it must bow to the specific directives of Congress." Id. at 757. In determining whether a guideline accurately reflects Congress' intent, the court looks at the statutory language, and if the guideline is at odds with the plain language of the statute, "it must give way." Id.

In LaBonte, Congress directed the Commission to assure that the guidelines specified a prison sentence "at or near the maximum term authorized for categories of" adult offenders who commit their third felony drug offense or violent crime. Id. at 752 (citing 28 U.S.C. § 994(h)). At issue was whether, "by 'maximum term authorized,' Congress meant (1) the maximum term available for the offense of conviction including any applicable statutory sentencing enhancements, as the United States argue[d], or (2) the maximum term available without such enhancements, as the Commission ha[d] determined." Id. at 752–53. The Court found that, applying the maxim that "Congress said what it meant" and giving the words their ordinary meaning, the word "maximum" most naturally connoted the "greatest quantity or value attainable in a given case." Id. at 757 (quoting Moskal v. United States, 498 U.S. 103, 108 (1990); Webster's New International Dictionary 1396 (2d ed. 1958); Black's Law Dictionary 979 (6th ed. 1990)). The Court concluded that the phrase, "maximum term authorized" should

be construed as requiring the "highest" or "greatest" sentence allowed by statute. Id. at 758.

"In sum, we hold that the phrase 'at or near the maximum term authorized' is unambiguous

and requires a court to sentence a career offender 'at or near' the 'maximum' prison term

available once all relevant statutory sentencing enhancements are taken into account." Id. at

762.

Applying the same maxim and giving the words their ordinary meaning, 28 U.S.C. §

994(t) charges the Commission with defining what constitutes "extraordinary and compelling

reasons for sentence reductions." Congress stated that "the Commission ... shall describe

what should be considered extraordinary and compelling reasons for sentence reductions,

including the criteria to be applied and a list of specific examples." Id. This language is broad

and does not on its face preclude an "unusually long sentence" along with the other criteria

found in USSG §§1B1.13(b)(6) and (c) from being considered "an extraordinary and

compelling" reason for a sentence reduction. To the contrary, the language is unambiguous

that the Commission "shall describe what should be considered extraordinary and compelling

reasons for sentence reductions ... and a list of specific examples."

The government argues that "no reasonable interpretation" of "extraordinary and

compelling," when considered in the context of the structure and purpose of 18 U.S.C. §

3582(c)(1)(A)(i), can encompass nonretroactive or intervening changes in case law and that

the Commission's interpretation of the statute as set forth in § 1B1.13(b)(6) therefore is invalid.

Resp., ECF No. 536 at 15. However, prior to the promulgation of § 1B1.13(b)(6), several

courts found that just such changes in case law can be "extraordinary and compelling reasons"

for a sentence reduction, and that has been the law in the Fourth Circuit since 2020. See

13

McCoy, 981 F.3d at 286 ("We think courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair."). Of course, McCoy has been superseded by § 1B1.13(b)(6), but to say that no reasonable interpretation of extraordinary and compelling can include nonretroactive or intervening changes in case law is belied by McCoy and other courts that reached similar conclusions. See United States v. Ruvalcaba, 26 F.4th 14, 28 (1st Cir. 2022) ("We hold that the district court's categorical exclusion of non-retroactive changes in sentencing law from the 'extraordinary and compelling' calculus is neither consistent with the relevant statutory text nor compelled by the arguments embraced by the district court."); United States v. Chen, 48 F.4th 1092, 1097–98 (9th Cir. 2022) (finding for purposes of § 3582(c)(1)(A), "[t]here is no textual basis for precluding district courts from considering non-retroactive changes in sentencing law when determining what is extraordinary and compelling."); United States v. McGee, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (finding that nothing prohibits district courts from finding the existence of "extraordinary and compelling" circumstances based at least in part on the fact that the First Step Act lowered the mandatory minimum sentence to be imposed under 21 U.S.C. § 841(b)(1)(A)).

To be sure, other courts reached the opposite conclusion. See, e.g., United States v. McCall, 56 F.4th 1048, 1055 (6th Cir. 2022) ("Consistent with the text of the compassionate-release provision, along with the principles, structure, and history of federal sentencing law, we hold that nonretroactive changes in sentencing law cannot be 'extraordinary and compelling reasons' that warrant relief."); United States v. King, 40 F.4th 594, 595 (7th Cir. 2022) ("When deciding whether 'extraordinary and compelling reasons', 18 U.S.C. §

14

McCoy, 981 F.3d at 286 ("We think courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair."). Of course, McCoy has been superseded by § 1B1.13(b)(6), but to say that no reasonable interpretation of extraordinary and compelling can include nonretroactive or intervening changes in case law is belied by McCoy and other courts that reached similar conclusions. See United States v. Ruvalcaba, 26 F.4th 14, 28 (1st Cir. 2022) ("We hold that the district court's categorical exclusion of non-retroactive changes in sentencing law from the 'extraordinary and compelling' calculus is neither consistent with the relevant statutory text nor compelled by the arguments embraced by the district court."); United States v. Chen, 48 F.4th 1092, 1097–98 (9th Cir. 2022) (finding for purposes of § 3582(c)(1)(A), "[t]here is no textual basis for precluding district courts from considering non-retroactive changes in sentencing law when determining what is extraordinary and compelling."); United States v. McGee, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (finding that nothing prohibits district courts from finding the existence of "extraordinary and compelling" circumstances based at least in part on the fact that the First Step Act lowered the mandatory minimum sentence to be imposed under 21 U.S.C. § 841(b)(1)(A)).

To be sure, other courts reached the opposite conclusion. See, e.g., United States v. McCall, 56 F.4th 1048, 1055 (6th Cir. 2022) ("Consistent with the text of the compassionate-release provision, along with the principles, structure, and history of federal sentencing law, we hold that nonretroactive changes in sentencing law cannot be 'extraordinary and compelling reasons' that warrant relief."); United States v. King, 40 F.4th 594, 595 (7th Cir. 2022) ("When deciding whether 'extraordinary and compelling reasons', 18 U.S.C. §

14

to ignore Congress's retroactivity determinations on a case-by-case basis. Resp., ECF No. 536 at 24–25. The government points out that three members of the Commission voted against approving §1B1.13(b)(6), expressing concern that the policy statement exceeded the Commission's authority and made a "seismic structural change" to the criminal justice system without congressional authorization or directive. Sent. Comm. Public Meeting Tr. from April 5, 2023, at 60. The dissenting commissioners were concerned that allowing nonretroactive changes in law to establish a basis for a sentence reduction "supplant[ed] Congress's legislative role," and created a "separation of powers" problem. Id. at 60–61.

This issue was addressed by the Third Circuit Court of Appeals in a similar context. The court noted the following when addressing retroactivity of guidelines amendments in USSG § 1B1.10:

> Although the Commission's policy statements are subject to neither the 180–day waiting period nor the APA's notice-and-comment requirements, its revision of § 1B1.10 did not violate the separation-of-powers doctrine. The purpose of those measures—to make the Commission accountable—was fulfilled. "Although policy statements are not subject to the 180–day waiting period applicable when the Commission passes a Guidelines Amendment, Congress can direct the Commission to change its retroactivity determination or pass a law overruling the Commission's determination 'at any time.'" [United States v. Horn, 679 F.3d 402, 405–06 (6th Cir. 2012) (quoting Mistretta v. United States, 488 U.S. 361, 394 (1989)) (internal citation omitted)]; see also United States v. Fox, 631 F.3d 1128, 1131 (9th Cir. 2011) ("Congress, of course, can override both Guidelines and Policy Statements by statute."). The Commission, then, remains fully accountable to Congress when it issues binding policy statements like § 1B1.10. Moreover, the Commission did solicit public views about § 1B1.10(b)'s limitation on sentence reductions and made its decision to make the limitation more stringent at a public hearing. See 76 Fed.Reg. 24960 (May 3, 2011); U.S. Sentencing Comm'n, Public Meeting Minutes (June 30, 2011). "The public nature of the proceedings provided an

16

effective check and allayed the concerns voiced by the Court in Mistretta." Horn, 679 F.3d at 406.

No legislative power imbalance of constitutional dimensions resulted from the Commission's decision to set a limit on sentence reductions pursuant to § 3582(c)(2). Congress validly delegated to the Commission authority to make that decision, drafted the statute that made it binding on courts, and retained the power to legislate over it. The legislative authority Defendants ascribe to the Commission was not unfettered or otherwise improper.

United States v. Berberena, 694 F.3d 514, 524–25 (3d Cir. 2012). The Eighth Circuit reached

the same conclusion in United States v. Anderson, 686 F.3d 585, 589–591 (8th Cir. 2012), as

did the Eleventh Circuit in United States v. Colon, 707 F.3d 1255, 1261 (11th Cir. 2013).

The same reasoning applies with regard to §1B1.13(b)(6) and (c). Congress gave the

Commission the authority to promulgate the policy statement at 28 U.S.C. § 994(t) and the

Commission did so. Congress presumably reviewed §1B1.13(b)(6) and (c) during the 180-day

period the revised guidelines were under review and took no action. If Congress believed that

the Commission's policy statement ran afoul of the doctrine of separation of powers, it could

have taken action and indeed, can still take action, using its authority to override the policy

statement. Fox, 631 F.3d at 1131. This court can discern no basis for taking action that

Congress has the authority to take with regard to policy statement but thus far, has not.

The government also argues that §1B1.13(b)(6) conflicts with 18 § U.S.C.

3582(c)(1)(A)'s plain text, context, and purpose. Resp., ECF No. 536 at 15–23. But the

government's brief was filed before the Fourth Circuit issued its decision in Davis, which held

that a change in case law can constitute an extraordinary and compelling reason for

compassionate release. The court first quoted McCoy, 981 F.3d at 287 (cleaned up) for its

17

statement that "the very purpose of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions where there is not a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction." Davis, 99 F.4th at 657. The court next quoted Concepcion v. United States, 597 U.S. 481, 487 (2022), which held that "[b]ecause district courts are always obligated to consider the nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them." Davis, 99 F.4th at 657. The court concluded that Concepcion and the Commission's policy statement in § 1B1.13 (b)(6) "serve to confirm and amplify" the court's earlier ruling in McCoy that "[n]on-retroactive changes in law remain relevant when a court has to decide when and how to modify a sentence," and a court abuses its discretion when it fails to do so. Id. at 658.

Although the Fourth Circuit did not parse the language of § 1B1.13 (b)(6) in connection with 18 U.S.C. § 3582(c)(1)(A), the court found the policy statement to be consistent with the Supreme Court precedent set in Concepcion and its own precedent in McCoy. Given the court's unequivocal holding that non-retroactive changes in the law may warrant compassionate release, this court has no basis for finding that USSG §1B1.13 (b)(6) is at odds with 18 U.S.C. § 3582(c)(1)(A)'s plain text, context, and purpose.

Finally, the court notes that it found no other authority on this issue in the Fourth Circuit, and further notes that other courts which have considered whether the Commission exceeded its authority are divided. Compare, e.g., United States v. Jean, 108 F.4th 275, 290 (5th Cir. 2024) (taking note of the deference given to the Commission by both Congress and the Supreme Court and finding that the Commission's resolution of the circuit split supports

18

the conclusion that modification of a legally imposed sentence may be warranted by non-retroactive changes in the law); and <u>United States v. Ware</u>, No. 1:97-CR-00009-SCJ, 2024 WL 1007427, at *7 (N.D. Ga. Mar. 6, 2024) (assessing same arguments the government makes here and concluding that "that the Sentencing Commission lawfully exercised its authority in defining extraordinary and compelling reasons for compassionate release in Section 1B1.13(b)(6)'s amendment for unusually long sentences.") <u>with</u> <u>United States v. O'Neill</u>, No. 97-CR-98-1-JPS-JPS, 2024 WL 2369102, at *22 (E.D. Wis. May 23, 2024) ("[T]he Court finds that § 1B1.13(b)(6) is manifestly contrary to the statutory scheme set forth in § 994(t) and § 3582(c)(1)(A), and that the Commission exceeded its statutory authority by adding the subsection.") and <u>United States v. Carter</u>, No. 07-374-1, 2024 WL 136777, at *6 (E.D. Pa. Jan. 12, 2024) (finding that Third Circuit's holding that an unusually and disproportionately long sentence is not an extraordinary and compelling sentence warranting a sentence reduction could not be overridden by the Commission because it did not have authority to amend the statute the court construed in a prior case).

Notwithstanding the division among the courts, this court is bound to follow Fourth Circuit precedent set out in <u>Davis</u>. Although the argument regarding whether the Commission exceeded its authority was not before the <u>Davis</u> court, the Fourth Circuit implicitly found that §§ 1B1.13(b)(6) and (c) resulted from an appropriate exercise of the Commission's authority when it applied the policy statement to find that a gross disparity between an original sentence and the sentence the defendant likely would receive today can be an extraordinary and compelling reason warranting compassionate release.

In sum, the court finds that §§1B1.13(b)(6) and (c) of the guidelines are consistent with 18 U.S.C. § 3582(c)(1)(A) and 28 U.S.C. § 994(t). The Commission did not exceed its authority when it amended the policy statement, and the court will apply the Commission's interpretation of what constitutes an extraordinary and compelling circumstance warranting a sentence reduction to Fields' case.

## B. Change to Mandatory Minimum Sentence

Prior to the First Step Act, § 841(b)(1)(A) provided that if a person violated the statute "after a prior conviction for a <u>felony drug offense</u> has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years . . . ." 21 U.S.C. § 841(b)(1)(A) (2010). A person with two prior convictions faced a mandatory term of life imprisonment. <u>Id.</u> The First Step Act amended the statute to provide that if a person violated the statute "after a prior conviction for a <u>serious drug felony</u> or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years …." 21 U.S.C. § 841(b)(1)(A) (2018) (emphasis added). A person with two prior convictions now faces a mandatory minimum of 25 years rather than life. <u>Id.</u> Thus, two changes were made to the statute: The underlying crime must now be a "serious drug felony," and the mandatory minimum sentences with prior qualifying predicates were lowered to 15 and 25 years, respectively.

The government agrees that if Fields were sentenced today, he would face a mandatory minimum sentence of 15 years rather than 20 years, based on the changes made by the First Step Act. The government also agrees that because of changes to offense levels based on drug quantity, Fields' guidelines range would be 188 to 235 months, rather than the 235 to 293

20

months he faced at the time he was sentenced.[11] However, the government asserts that the change to the statutory mandatory minimum sentence applicable to Fields is not an extraordinary and compelling reason for a sentence reduction.

First, the government contends that Fields stipulated to the propriety of the 240-month sentence and that even though the plea agreement was reached in the context of the 20-year mandatory minimum, it also represents an admission and concession by Fields that 240 months in prison is an appropriate penalty for his serious criminal misconduct. Resp., ECF No. 540 at 4–5. But, as the government recognizes, plea agreements do not take place in a vacuum. At the time Fields pled guilty, the government had as a bargaining chip the fact that he faced a mandatory life sentence based on the two § 851 enhancements. However, after the changes to 21 U.S.C. § 841(b)(1)(A), the mandatory minimum sentence for two § 851 enhancements dropped to 25 years rather than life. With the threat of a life sentence no longer on the table and with Fields' mandatory minimum sentence reduced to 15 years, the fact that Fields previously agreed to a 20-year sentence does not preclude a finding that today he would receive a much shorter sentence.

The government also argues that Fields' sentence of 20 years is only 5 months higher than the revised guidelines range of 188 to 235 months and that the difference is not significant enough to warrant compassionate release. But this argument ignores the reality that Fields was sentenced to the statutory mandatory minimum sentence and the sentence is 5 years longer than the minimum sentence he would face today.

---

[11] As set forth below, the court finds that Fields' guidelines sentence today would be 168 to 210 months.

21

Finally, the government argues that the disparity between the sentence Fields received in 2013 and the sentence he would receive for the same conduct today is not an extraordinary and compelling reason to reduce his sentence. It claims that post-hoc changes to sentencing paradigms and rules are the norm rather than the exception and also that Fields' current sentence of 240 months is only 5 months longer than the top of his new guidelines range.

But as <u>Davis</u>, 99 F.4th at 657–58, made clear, a change in the law can constitute an extraordinary and compelling reason for compassionate release. This court and others have found that defendants may be entitled to compassionate release when they were sentenced to a mandatory minimum sentence but would today be subject to a lower mandatory sentence. <u>See, e.g.</u>, <u>United States v. Spruhan</u>, No. 5:13-cr-00030, 2023 WL 4186365 (W.D. Va. June 26, 2023); <u>United States v. Gamboa</u>, No. 2:08-cr-00151-2, 2022 WL 275528 (S.D.W.V. Jan. 28, 2022) (quoting <u>United States v. Johnson</u>, No. 2:07-cr-0924, 2021 WL 2379474 (D.S.C. June 10, 2021)) ("[T]he logic 'espoused in <u>McCoy</u> ... applies with equal force to the similar disparities brought about by the First-Step-Act changes to [21 U.S.C.] §§ 841 and 851.'"); <u>United States v. Richards</u>, No. 3:11-CR-31, 2021 WL 3861599, at *4 (W.D. Va. Aug. 30, 2021) (quoting <u>United States v. Stuart</u>, No. 5:92-CR-114-BR-3, 2020 WL 7232074, at *3 (E.D.N.C. Dec. 8, 2020) ("Following <u>McCoy</u>, other district courts in this Circuit have found that they 'may consider changes in sentencing law—even nonretroactive ones—in assessing whether a defendant has shown extraordinary and compelling reasons warrant a reduction in his sentence.'"); <u>Babb v. United States</u>, No. ELH-04-0190, 2021 WL 2315459, at *12 (D. Md. June 4, 2021) (concluding that court has authority under <u>McCoy</u> to consider legislative change to § 851 in conducting review of motion for compassionate release); <u>United States v. Lii</u>, 528

22

F. Supp.3d 1153 (D. Haw. Mar. 23, 2021) (applying reasoning in McCoy to reduce a life sentence based on two prior state court convictions for relatively minor drug offenses); and United States v. Williams, No. 5:12cr14, 2020 WL 5834673 (W.D. Va. Sept. 30, 2020) (same).

Additionally, the fact that the difference in the two sentences is five years, and not the larger differences cited in McCoy, is not dispositive.[12] This court found in United States v. Shaw, No. 5:15-cr-00025, 2021 WL 3007266 (W.D. Va. July 15, 2021), that a sentencing disparity of 22 months was an extraordinary and compelling reason to grant a sentence reduction. Other courts have found similar differences in sentences to qualify as "extraordinary and compelling reasons" to reduce a sentence. See United States v. Miller, No. 2:08-cr-01155-DCN-8, 2023 WL 7065545, at *4 (D.S.C. Oct. 26, 2023) (granting compassionate release when if sentenced today, defendant's sentence would likely be 30 months shorter than original sentence); United States v. Williams, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021) (finding sentence more than three years longer than it would have been were defendant convicted today to be an extraordinary and compelling reason for compassionate release); and United States v. Brown, No. 3:15-cr-00017, 3:06-cr-00021, 2021 WL 2389881, at *10 (W.D. Va. June 11, 2021) (finding 74-month difference in sentence defendant would have received if sentenced today to be a "gross disparity" and thus an extraordinary and compelling reason to warrant a sentence reduction).

---

[12] In McCoy, one petitioner originally was sentenced to just over 35 years and his sentence was reduced to time served, or approximately 17 years. The three other petitioners were sentenced to 45 years and their sentences were reduced to time served, or approximately 25 years. McCoy, 981 F.3d at 277-79.

The court finds that the 5-year disparity between Fields' current sentence and the sentence he would likely be given for the same conduct today, is a "gross disparity" that constitutes an "extraordinary and compelling" reason warranting a sentence reduction under § 3582(c)(1)(A).[13]

### C. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

---

[13] Fields also contends that neither of his prior convictions would qualify as a "serious drug felony" for purposes of increasing his sentence under the current version of 21 U.S.C. § 841(b)(1)(A). Supp. Resp., ECF No. 541 at 3. However, because the court finds that he is entitled to a sentence reduction based on the reduced mandatory minimum sentence in the amended statute, it does not address this argument.

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, Fields participated in a conspiracy for approximately three years that trafficked powder cocaine, crack cocaine, heroin, PCP, and ecstasy. Fields was a long-time resident of Winchester, Virginia, and distributed crack cocaine, PCP, ecstasy, and marijuana in that area. When a search warrant was executed at Fields' residence in 2012, officers seized a digital scale, a metal grinder, seven cell phones, a .22 caliber handgun, 229.7 grams of marijuana, 8.5 grams of crack cocaine, miscellaneous drug packaging materials, and $2,220. He was found to be responsible for distributing no less than 840 grams of cocaine base. PSR, ECF No. 389 ¶¶ 12-19. The court is familiar with the destruction wrought in communities by drug distribution, and Fields' participation in this conspiracy for several years weighs against a sentence reduction.

Turning to the history and characteristics of the defendant, Fields and his mother reported that he was diagnosed with Attention-Deficit/Hyperactivity Disorder in elementary

25

school and was prescribed Ritalin to deal with behavior problems. When Fields turned 18, his mother could no longer afford the Ritalin prescription and he stopped taking it. Fields began smoking marijuana at 13 and used it daily except when incarcerated. By age 17 he was consuming alcohol and smoking crack cocaine, which became a daily habit. In his early twenties he started abusing ecstasy and also reported that he was addicted to PCP. Id. ¶¶ 71, 72.

Fields struggled in school where his cognitive abilities were assessed as "low average" and his academic skills were deficient by two years. Fields withdrew from school when he was in the sixth grade and failing his classes, due primarily to absenteeism. Id. ¶ 74. Fields' criminal history is non-violent, except for an incident where he shoved his mother and physically struggled with his sister before being subdued by law enforcement. Fields' mother had called the police to report that Fields was acting strangely because of his drug use. Id. ¶ 39. Fields received 13 criminal history points, with 2 of the points assessed because he committed the instant offenses while under a criminal justice sentence, giving him a criminal history category of VI. Id. ¶¶ 49–51.

Since being incarcerated, Fields has had a single disciplinary incident of "failing to stand for count," which occurred in 2020. He has earned his GED, taken several other classes, and completed a drug education course. ECF No. 517-3 at 1. Fields is in low-security custody and is on a waiting list to participate in the Residential Drug Abuse Program, even though he is not entitled to a sentence reduction because of the gun enhancement he received. Fields wants to participate in the drug program because he believes it will be useful to him given his substance abuse history. Supp. Resp., ECF No. 541 at 8.

26

Looking at Fields' history and characteristics as a whole, although he has broken the law repeatedly and a gun was found in his residence at the time he was arrested, he has no real history of violence. Also, his institutional record, while not perfect, is impressive in that the only disciplinary incident recorded in more than 11 years was for failing to stand for count. In addition, Fields has used his time productively while incarcerated, earning his GED despite having academic difficulties. These factors taken together weight slightly in favor of Fields' request for a sentence reduction.

Looking next at the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the court finds that a sentence of 180 months is sufficient to meet these goals. A sentence of 180 months is substantial, and the court does not believe that additional time is necessary to achieve the punitive and deterrent goals of punishment. Nor does the court find that additional time is necessary to provide Fields with educational or vocational training, medical care, or other correctional treatment.

Looking at the kinds of sentences available and the applicable guidelines range, as discussed above, Fields would face a statutory mandatory minimum sentence of 180 months for his offense if he were sentenced today. His base offense level would be 32 (reduced from 34 after changes to USSG § 2D1.1), increased by 2 levels for possession of a firearm in connection with the offense and decreased by 3 levels for acceptance of responsibility, for a total offense level of 31. While he was assessed 13 criminal history points in 2013, today, after

27

Amendment 821 to the guidelines, he would have only 12 criminal history points, which would place him in criminal history category V. USSG Ch. 5, Pt. A. His total offense level of 31 coupled with a criminal history category of V results in a guidelines sentencing range of 168 to 210 months. Both the reduced mandatory minimum sentence and the reduction in the guidelines sentence weigh in favor of reducing Fields' sentence.

Finally, considering the need to avoid unwarranted sentencing disparities, the court notes that Fields received the highest sentence in the conspiracy and his 20-year sentence was driven by the § 851 enhancement based on his prior conviction. As discussed above, Congress has now lowered that mandatory minimum sentence to 15 years. If Fields' sentence is reduced to 180 months, it will still be the highest sentence assessed on the defendants in the conspiracy. One other defendant was assessed a sentence of 180 months, with the next highest sentence being 156 months and the remaining sentences being 144 months, 132 months, and 74 months, respectively. Thus, reducing Fields' sentence to 180 months does not create an unwarranted sentencing disparity between codefendants as his sentence is still the most severe sentence assessed in the conspiracy. None of the other factors weigh in favor or against a sentence reduction.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Fields' case. Given the circumstances of this case, including Fields' history and characteristics, and the changes in 18 U.S.C. § 841(b)(1)(A) brought about by the First Step Act, and the relevant guidelines, the court concludes that a sentence of 180 months is appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Fields' conduct and criminal history,

promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public.

### III. Conclusion

For the above-stated reasons, the court will **GRANT** Fields' supplemental motion for compassionate release, ECF No. 541, and reduce his sentence to 180 months, but not less than time served, to be followed by a 10-year term of supervised release. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED.**

Entered: *October 16, 2024*

Michael F. Urbanski
Senior United States District Judge